## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

|  |  |  |
|---|---|---|
| **CHRISTINA PABON** | § | |
| *Plaintiff* | § | |
| | § | |
| **V.** | § | |
| | § | **CIVIL ACTION NO. 4:25-cv-04491** |
| | § | |
| | § | |
| | § | |
| **DAVID LY, HARRIS COUNTY** | § | |
| **SHERIFFS OFFICE , HARTZ** | § | |
| **CHICKEN a/k/a HARTZ** | | |
| **RESTAURANTS INTERNATIONAL** | | |
| **INC a/k/a HARTZ RESTAURANT** | | |
| **LLC** | | |
| *Defendants.* | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, **CHRISTINA PABON**, complaining of Harris County Sheriff's Deputy, DAVID LY and the HARRIS COUNTY SHERIFF OFFICE and HARTZ CHICKEN a/k/a HARTZ RESTAURANTS INTERNATIONAL INC a/k/a HARTZ RESTAURANT LLC for cause of action would respectfully show unto this Honorable Court as follows:

### I. NATURE OF THE CASE

1. This is a civil action arising under the United States Constitution, particularly under the provisions of the Due Process Clause and the Fourth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code § 1983, seeking damages against Defendants for committing acts, under color of law, with the intent and for the

purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. Alternatively, this is a civil action arising under the laws of the State of Texas for negligence and the Texas Tort Claims Act as set out in Chapter 101 et seq of the Texas Civil Practice and Remedies Code.

## II. PARTIES

3.  Plaintiff, CHRISTINA PABON ("Plaintiff"), is a citizen of the United States and currently resides Houston, Harris County, Texas.

4. Defendant, David Ly, is an individual who may be served with process at Defendant's residence by personal delivery at 19206 Country Village Drive, Spring, Texas 77388, or wherever David Ly may be found.

5. Defendant, HARTZ CHICKEN a/k/a HARTZ RESTAURANTS INTERNATIONAL INC a/k/a HARTZ RESTAURANT LLC, is a Texas corporation and Defendant may be served with process by serving DK Wireless LLC , its registered agent, by personal delivery at the registered office located at 12230 Megan Woods Loop ,Houston, Texas 77089 or wherever they may be found.

6. Defendant, Houston Police Department, is a government entity in the State of Texas, Harris County. It can be served with process by City Secretary Pat J. Daniel at the Office of the City Secretary, 900 Bagby Street Room P101, Houston, TX 77002.

7. Plaintiff, **CHRISTINA PABON** ("Plaintiff"), is a citizen of the United States and currently resides in Harris County, Texas.

8. Defendant, Deputy DAVID LY ("Deputy Ly"), is employed by the HARRIS COUNTY SHERIFF'S OFFICE and claims he was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs and usage of the HARRIS COUNTY SHERIFF'S OFFICE. At the time of the incident, Ly claims protections under his assumed role as a Deputy Officer of the HARRIS COUNTY SHERIFF'S OFFICE. Deputy Ly can be served with process by delivering a copy of the summons and complaint at an address to be provided under seal due to his role as a city official.

9. Defendant CITY OF HOUSTON a/k/a HARRIS COUNTY SHERIFF'S OFFICE ("HCSO") is a municipal governmental entity located in Houston, Harris County, Texas, and may be served by serving its is a government entity in the State of Texas, Harris County. It can be served with process by City Secretary Pat J. Daniel at the Office of the City Secretary, 900 Bagby Street Room P101, Houston, TX 77002.

10. Defendant HARTZ CHICKEN a/k/a HARTZ RESTAURANTS INTERNATIONAL INC a/k/a HARTZ RESTAURANT LLC is a private entity (Texas corporation) registered and authorized to conduct business in the State of Texas whose principal place of business situated in Houston, Harris County, Texas and may be served with process by serving DK Wireless LLC , its registered agent, by personal delivery at the registered office located at 12230 Megan Woods Loop, Houston, Texas 77089 or wherever they may be found.

Although Plaintiff may refer to Defendants collectively at times, specific factual references are made concerning actions or inactions by specific Defendants

throughout this Complaint – these are not global allegations. As such, this pleading complies with current federal standards. FED. R. CIV. P. 8.

## III. JURISDICTION

11. This action is brought pursuant to 42 U.S.C § 1983, the Due Process Clause and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has

jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction to hear the state claims that will be set forth in this complaint.

## IV. VENUE

12. Venue is proper in this district under 28 U.S.C. 1391(b) because the acts, events, or omissions giving rise to this claim occurred in Houston, Harris County, Texas, which falls within the jurisdiction served by the United States Court for the Southern District of Texas, Houston Division.

## IV. FACTUAL BACKGROUND

13. On October 19, 2023, at approximately 2:50 to 3:00 PM, Plaintiff was seated inside her vehicle in the parking lot of Hartz Chicken located at 1441 Tomball Parkway, Houston, Texas 77086. It was broad daylight in the afternoon.

14.  Prior to the incident, Plaintiff was located in her vehicle with the engine running and car windows down.  Plaintiff could audibly hear and physically observe the other individuals during the incident. Plaintiff  recorded a significant portion of her interaction with Defendant Ly and Ly's interaction with Alexis on her cell phone, and

the relevant portion of Plaintiff's recording is attached to this Complaint as Exhibits A and B ("Plaintiff's Recording 1 and Plaintiff's Recording 2 ").

15.  At the time of the incident, Plaintiff was with her friend, **Alexis Ely**, who had been drinking earlier. Plaintiff estimates that Alexis consumed approximately six (6) Fireball shots during that day and prior evening. Alexis was visibly intoxicated, exhibiting slurred speech, groggy eyes, and emotional volatility.

16.  Plaintiff was attempting to take Alexis home due to her intoxicated condition and escalating behavior.  Though visibly drunk, Alexis didn't want to go home and she exited the vehicle out of frustration and walked toward Hartz Chicken.  Plaintiff followed Alexis into the restaurant, where Ly was behind the counter preparing chicken.  Surveillance video shows the three individuals inside the restaurant with other patrons.  No other patrons were disturbed by Plaintiff's interaction with her friend.  Ms. Pabon then left the restaurant planning to honor Alexis' request to stay at the restaurant.

17. Plaintiff  briefly left the immediate area in her vehicle but out of concern for Alexis' safety she returned within approximately two to three minutes. Upon returning, Plaintiff observed Alexis outside speaking with a man later identified as **David Ly**. He was leaning against a nearby business structure while speaking with Alexis and looking around the area.

18.  Ms. Pabon did not know that David Ly was a police officer. He was wearing an Astros shirt and a black baseball cap. He displayed no visible badge, no uniform, and no outward police identification and gave no verbal indication that he was an officer.

19.  Concerned for her visibly intoxicated friend, Plaintiff remained seated inside her vehicle and asked Alexis to return to the vehicle so that she could take her home. At

no point during this initial interaction did Ms. Pabon exit her vehicle.  Ms. Pabon began recording the interaction at this time.

20. David Ly then approached the driver-side door of Ms. Pabon vehicle. Without identifying himself as a police officer and without issuing any verbal commands, he grabbed the driver-side door handle and held it for approximately three (3) seconds. Prior to approaching, Plaintiff while standing outside the vehicle, David Ly lifted his shirt and exposed a firearm tucked into his waistband.

21. From Ms. Pabon's  perspective, an unidentified man in civilian clothing approached her vehicle, attempted to open her car door, and displayed a gun without explanation. She had no reason to believe he was law enforcement.

22.  Believing she was about to be shot, Plaintiff drove forward in an attempt to remove herself from what she perceived to be an immediate and potentially deadly threat. David Ly did not immediately release the handle and dragged himself briefly while holding onto the vehicle before losing his grip.

23.  After driving forward, Ms. Pabon stopped at the neighboring gas station and immediately and returned to check on him. She began recording the interaction again on her phone and yelled to Alexis to record as well.  See Exhibit C (Plaintiff's Recording 3).  See Also Exhibit D (Hartz Surveillance 1)

24.  The situation escalated rapidly. David Ly grabbed Plaintiff by her shoulders and arms and slammed her downward. He then tackled her, causing contusions and lacerations to her arms and knees from making hard contact with the pavement.

25.  Afterwards, David Ly positioned himself on top of her body, placing his weight across her stomach and torso area. His weight pressed down onto her abdomen and

restricted her ability to breathe. Plaintiff struggled to inhale fully and felt tightness in her chest as she attempted to draw air.

26.  Her heart began racing. She felt disoriented and overwhelmed with fear. She experienced what she later described as a panic attack. She feared for her life and believed she could be shot at any moment.  Plaintiff has autoimmune conditions that were exacerbated by this incident and the events that ensued after.

27.  During the altercation, after attacking Plaintiff, David Ly began yelling that she was "resisting an officer." This was the first time Ms. Pabon heard any claim that he was law enforcement. He also called out "Code Blue" during the incident. At no time prior to initiating physical force did David Ly clearly identify himself as a police officer or provide any warning before grabbing, tackling, and restraining her. Prior to attacking Plaintiff, Deputy Ly radioed in the incident under the pretense of a lawful arrest against Ms. Pabon.

28.  As the altercation continued, bystanders in the parking lot began gathering and observing the incident. Plaintiff became aware that members of the public were watching as she was pinned to the pavement in broad daylight. She felt exposed, humiliated, and publicly embarrassed. Being restrained on the ground in a commercial parking lot intensified her fear and sense of vulnerability.  Other officers came on scene and had active body worn camera during the investigation of the incident.  No excusive force report was taken nor was Ly reprimanded for his actions.

29.  Throughout the encounter, Christina Pabon's actions were motivated by her concern for her visibly intoxicated friend and her attempt to remove herself from what she perceived to be an immediate threat from an unidentified armed individual.

30.  Ms. Pabon was arrested for a felony aggravated assault on a peace officer, which was subsequently dismissed.  As a result, she was plastered on social media as a

criminal, lost business and suffered injury to her reputation.  Additionally, she had significant flareups of her lupus and other autoimmune conditions.  She suffered psychological damage for which she also had to undergo treatment.  To date, she is still under the care of various medical providers and suffers physical and emotional pain.

31.  Defendant Ly used excessive force that was objectively unreasonable which was direct and proximate cause of multiple injuries to Plaintiff.  Plaintiff has sustained substantial damages including physical injury and accompanying medical findings that are classified by the American Medical Association's Guide to the Evaluation of Permanent Impairment (6th ed.) as a permanent impairment.

32.  Defendant Ly has engaged in a pattern of reckless behavior that has not been reprimanded making it a policy of HCSO by allowing an officer to continually commit wrongdoing without consequence.  Specifically, David Ly was written up by Precinct 4 for the following incidents:

a) Not thoroughly investigating a family violence case in 2025

b) Two unknown disciplinary violations (counseling and sustained violation)in 2024

c) Received DWI counseling for failure to properly administer HGN testing in 2024

d) Improper search of an individual resulting in a gun in JPC in January 2026

e) Failure to discard or inventory narcotics for evidence in December 2024

f) Failure to properly investigate a FSGI or prior to arrest in August 2024

## V. CAUSES OF ACTION
### A. 42 USC §1983 — EXCESSIVE FORCE

33. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

34. Plaintiff sues Defendant Ly for the unlawful use of excessive force under 42 U.S.C. §1983. To prevail in a claim under §1983, a plaintiff must prove a) that his constitutional rights were violated, and b) that the violation was caused by a person acting under color of law. *West v. Atkins*, 487 U.S. 4242 (1988).

35. "The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process. The right has also been premised on the fourth amendment guarantee of '(The) right of … people to be secure in their persons,' made applicable to the states by the fourteenth amendment." *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981) (internal citations omitted).

36. If a government official's action "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." *Shillingford*, 634 F.2d at 265. "Actions permissible in controlling a riotous mob or in Case 3:25-cv-00058 Document 1 Filed 03/03/25 in TXSD Page 7 of 18 dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian." Id.

37. Deputy Ly used excessive and/or deadly force in the course of his duties at the scene of the incident in intentionally assaulting Plaintiff with a firearm, attempting to accost and commandeer her vehicle, tackling her to the ground, restricting her breathing and unlawfully arresting her in violation of the Fourth Amendment and its "reasonableness" standard.

To establish that the Defendant violated Plaintiff's constitutional right to be free from excessive force, Plaintiff must show: a) an injury; b) which resulted from the use of force that was clearly excessive to the need; and c) the excessiveness of which was objectively unreasonable. See *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2001).

38. Plaintiff suffered multiple injuries as a direct result of the Defendant's actions, including lacerations, contusions, headaches, autoimmune disease flareups, weight loss, loss of business, damage to reputation, false imprisonment, emotional distress and psychological damage, all of which resulted in medical bills, pain and suffering, loss of abilities, and other general and special damages.

39. Defendant Ly's actions were clearly excessive to the need. Oral commands to the Plaintiff would have achieved Ly's goals without the need for force at all. In addition, Ly could have avoided interaction with Plaintiff at all as her actions were non-violent, non-threatening and not disruptive.  Ms. Pabon did no action that rose to any level of criminal activity requiring law enforcement involvement.  Additionally, due to Ly being visible on internal surveillance video at the restaurant, serving food, it brings into question whether he was within the course and scope of his duties while frying chicken.

40. The excessiveness of the force used by Ly was objectively unreasonable. Plaintiff was suspected of no crimes, was not interfering with Ly's chicken duties, and was not

near the scene of an emergency. Ly was merely annoyed by the Plaintiff's lawful presence, and, inspired by malice, decided to assault her. Ly was not making a split-second decision but rather had ample time to assess the circumstances and conditions before attacking Plaintiff.   Alexis was in no immediate danger as she was quite some distance from Ms. Pabon's vehicle and Ms. Pabon was not attempting to approach Alexis when Ly charged at her vehicle brandishing a weapon.  Ly could have taken Ms. Alexis inside the restaurant or attempted to alert Ms. Pabon through her open window that he was an officer and she needed to leave.  Ly never did any of these things.

41. These facts were easily ascertainable by any reasonable law enforcement officer and are clearly established by video evidence. No reasonable investigator would have believed that running to Plaintiff's car, flashing a firearm, grabbing the door handle attempting to remove her and then tackling and smothering her after she tried to render aid was necessary or excusable under the circumstances. Use of deadly force against a nonthreatening suspect is objectively unreasonable. See, e.g., *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) (holding that when a suspect had "stopped advancing and did not pose a threat to anyone but himself, the force used against him, i.e. deadly force, was objectively excessive.")

42. Deputy Ly was acting under color of law because he was purporting to act in the scope of his employment as an officer with the HCSO at the time of this incident and with the authority provided by that agency.

43. Defendant David Ly's actions in this incident satisfy all elements of an excessive force claim under 42 U.S.C. §1983.

### B. 42 USC §1983 — NO QUALIFIED IMMUNITY

44. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

45. Defendant David Ly may claim that he is entitled to qualified immunity against a §1983 claim. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-part test for determining whether or not qualified immunity applies: a) do the facts indicate that a constitutional right has been violated, and b) was that right clearly established at the time of the alleged conduct. When such a right has been violated, qualified immunity does not apply. *Id*.

46. The facts of this incident indicate that Deputy Ly violated Plaintiff's Fourth Amendment right against unreasonable seizure. Intentionally flashing a weapon, attempting to enter her vehicle and slamming her to the ground executing an unlawful arrest all constitute a "seizure" governed by the objective reasonableness standard of the Fourth Amendment, as described above. Ly had no reasonable basis to suspect that Plaintiff was an imminent threat to anyone or would interfere with HCSO activities (or even HARTZ's activities if he was acting in his individual capacity as an employee/owner of said entity) in any way if she was not assaulted.

47. The right of Plaintiff to be free from being intentionally attacked when she posed no threat to anyone is clearly established, and has been for decades. See, e.g., *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) (holding that "where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking to the conscience, a court may conclude that the officers have crossed the 'constitutional line.'"). The central concept is that of "fair warning": The law can clearly be established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation marks omitted); see also

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc; holding that a clearly established law is one where a prior decision provided reasonable warning that the conduct violated federal law).

48. Because Defendant Ly violated Plaintiff's clearly established Fourth Amendment right against unreasonable seizure by using objectively unreasonable force clearly established by decades of court precedence, Defendant Ly is not entitled to qualified immunity under *Saucier*.

### C. 42 USC §1983 — HCSO's LIABILITY UNDER *MONELL*

**i. Actions by a Harris County Employee/Policymaker**

 49. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

50. In order to hold a state agency such as HCSO liable under §1983, a plaintiff must demonstrate that the constitutional deprivation was the product of a policy or custom of the local governmental unit. See, e. g., *Pembaur v. Cincinnati*, 475 U.S. 469 (1986). The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. See *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978). "Official municipal policy includes the decisions of a government's lawmakers [and] the acts of its policymaking officials . . ." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

51. HCSO is liable to Plaintiff because Plaintiff's constitutional rights were violated due to the intentional actions of one of the HCSO's policymakers while serving in his official capacity and making decisions consistent with his authority. See *Brown v.*

*Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000) ("a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable."); see also *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). The *Pembaur* Court further explained: a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983. Ly called in the detainment and unlawful arrest of Plaintiff before acting making HCSO Complicit in his actions.

### ii. Ratification by the HSCO

52. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

53. Defendant HCSO is further liable to Plaintiff under *Monell* because policymakers within the agency ratified the acts that form the basis of Plaintiff's §1983 claim against Defendant David Ly. Ratification is an alternative basis of municipal liability under *Monell*. See *Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019) ("One way of establishing liability is to show that a policymaker ratified the acts of a subordinate.");see also *Covington v. City of Madisonville*, 812 F. App'x 219, 228-29 (5th Cir. 2020) (reversing the dismissal of a ratification claim

under *Monell* where the policymakers had covered up the perpetrator's misconduct and failed to turn over recordings to investigators).

54. Ratification can be demonstrated by lack of discipline: [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Deputy Ly was reprimanded for multiple incidents of misconduct by Precinct 4 a division of HCSO, and the final policymakers within Department. HSCO was fully aware of Ly's conduct and typical motivations. Rather than take any remedial action, HCSO covered up and/or allowed Ly's continued conduct. Ly was not disciplined or retrained, as a result of this incident and still maintains his position of rank and employment at HCSO.  Ly suffered no adverse consequences for his reckless actions against Ms. Pabon.

55. In addition to being its own basis for liability, ratification can also serve as evidence of municipal policy: "The failure to take disciplinary action in response to [illegal conduct], when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of [illegal conduct]: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy." Milam, 113 F. App'x at 628 (5th Cir. 2004); see also *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (suggesting that failure of officials to admit the employees' conduct was in error could be interpreted as a municipal policy.)

56. The policymakers within the HCSO ratified Deputy Ly's obvious violation of Plaintiff's Fourth Amendment rights after the incident, and HCSO is therefore liable under 42 U.S.C. § 1983 and *Monell*.

### D. NEGLIGENCE AND GROSS NEGLIGENCE – DEPUTY DAVID LY

57. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

58.  Pleading cumulatively and alternatively, and without waiving any other cause of action, Deputy Ly was negligent and grossly negligent in assaulting and attacking Plaintiff with a firearm and using excessive force causing bodily injury.

**i. Negligence**

59. The elements of a negligence claim in Texas are "(1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022)

 60. Ly had a duty to exercise reasonable care, based on a standard of care that would be used by a person of ordinary prudence under the same or similar circumstances, to avoid foreseeable risks of harm.  By running toward a vehicle in plainclothes brandishing a weapon, he failed to do so.

61. Deputy Ly's  negligence caused Plaintiff's injuries, and Plaintiff is entitled to recover for these injuries.

62. Additionally, Defendants' actions were done with reckless disregard of substantial risk of severe bodily injuries. As such, Plaintiff is entitled to exemplary damages.

 **ii. Gross Negligence**

63. Gross negligence has two elements in Texas: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

64. In the present case, Deputy Ly's attempt to remove someone from a vehicle while brandishing a weapon and failing to indicate that he was an officer, involves an extreme degree of risk considering the probability and magnitude of potential harm himself, Plaintiff, other patrons of the restaurant, and other bystanders.

65. Ly had actual knowledge of the Plaintiff's presence in a vehicle that was running and had no knowledge of whether she had a firearm which could have resulted in a gunfire exchange. Despite this awareness, Ly proceeded to run towards Plaintiff attempt to remove her from her vehicle and dragged himself on the concrete, demonstrating a conscious indifference to the rights, safety, or welfare of Plaintiff, himself and other bystanders.

66. The objective risk to Plaintiff and others in this situation, combined with Deputy Ly's subjective awareness of Plaintiff's presence and the extreme degree of risk involved, represents gross negligence on the part of Defendant Ly.

67. Because Deputy Ly was grossly negligent in causing Plaintiff's injuries, Plaintiff is entitled to exemplary damages.

**E. NEGLIGENCE PER SE – DEPUTY DAVID LY**

68.  Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

69. "To establish negligence per se, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th] 2000, pet. denied), citing *El Chico Corp. v.Poole*, 732 S.W.2d 306, 312 (Tex. 1987).

70. Defendants' conduct described herein constitutes an unexcused breach of the duty

To identify oneself as a peace officer while in plain clothes and conducting police activity.  Deputy Ly is in violation of the 4th Amendment protection against unreasonable seizures and he is arguably performing an abuse of his official capacity misusing government property (his weapon) by unlawfully assaulting a civilian who posed no threat of harm to him or anyone else.  See Tx. Penal Code 39.02.

71. Plaintiff is a member of the class of persons that the United States Constitution and  Texas Penal code was designed and promulgated to protect.

72.  Ly's unexcused breach of the duties imposed by Texas code and Constitution proximately caused Plaintiff's injuries.

73. Deputy Ly  was therefore negligent per se and is liable to Plaintiff for his injuries.

### F. TEXAS TORT CLAIMS ACT – HCSO

74. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

75. Under Tex. Civ. Prac. and Rem. Code § 101.021(2), a governmental unit in the state of Texas is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

76. Plaintiff sustained personal injury arising from the wrongful act or omission or negligence of David Ly using his government issued weapon.

77. Deputy Ly alleged he was acting within the scope of his employment at the time of the incident where he brandished his weapon issued by HCSO in plain clothes and approached Plaintiff's vehicle.

78. Deputy Ly would be personally liable to Plaintiff under Texas law as described above.

79. HCSO had actual and subjective notice of the injuries to the Plaintiff and the Defendants' potential liability immediately upon the occurrence of the incident as Defendant Ly called in the incident as a reason for Plaintiff's arrest.

80. Therefore, Defendants' actions and omissions, negligence, gross negligence, and conscious indifference as recited above are also violative of the Texas Tort Claims Act, as set out in Chapter 101 et seq of the Texas Civil Practice and Remedies Code. Pursuant to Tex. Civ. Prac. and Rem. Code § 101.25, these governmental entities have waived sovereign immunity and are liable for the damages Plaintiff sustained as a result of the attack.

## VI. DAMAGES

81. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous

paragraphs, inclusive, with regard to all causes of action.

82. As a result of Defendant' statutory and constitutional violations, Plaintiff has suffered serious and substantial damages and injuries as described herein, which must be determined by the finder of fact.

## VII. ATTORNEY'S FEES AND COSTS

83. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Plaintiff asserts right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if she prevails.

## VIII. RELIEF REQUESTED

84. For these reasons, Plaintiff prays for judgment against Defendants, any or all of them, for following:

a) Actual damages;

 b) Pre-judgment and post-judgment interest;

c) Punitive and exemplary damages against Defendant in an amount to be determined and as allowed by the Court. See Smith v. Wade, 461 U.S. 30 (1983);

d) Costs of Court; and

e) Such other and further relief as the Court deems just and equitable.

## IX. JURY DEMAND

85. Plaintiff respectfully demands trial by jury and has tendered the appropriate fee for the same.

## X. PRAYER

86. WHEREFORE, Plaintiff respectfully requests Defendant be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendant.

87. Plaintiff further respectfully request that he be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

Respectfully submitted,

Infinity Law Group, PLLC
440 Louisiana Street,
Suite 900,
Houston, TX 77002

_____
Lena Hinton
Attorney for Plaintiff
Bar No. 24132526
lena@infinitylawgroup.net
lena@infinitylawgroup.ai
Office Phone: (832) 479-1832

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's First Amended Complaint has been served on all counsel of record and/or the Respondent by electronic filing system with the Federal Rules of Civil Procedure on this the __11th__ day of _____February_____,2026.

_____

LENA HINTON
Attorney for Plaintiff

# Exhibit A
# [Placeholder]
# Plaintiff's Recording 1

# Exhibit B
# [Placeholder]
# Plaintiff's Recording 2

# Exhibit C
# [Placeholder]
# Plaintiff's Recording 3

# Exhibit D [Placeholder] Surveillance Video